**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY ANNE REVIT,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:04-1039** |
| **v.** | : | **(MUNLEY, D.J.)** |
| | | **(MANNION, M.J.)** |
| **UNION OF NEEDLE TRADES INDUSTRIAL & TEXTILE EMPLOYEES AFL-CIO, CLC,** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

Before the court is the defendant's motion for summary judgment.  For the following reasons, the court recommends that the motion be granted and the plaintiff's complaint be dismissed.

## I.    Procedural History

The plaintiff commenced this action on May 10, 2004, by filing her complaint. (Doc. No. 1.)  In the complaint, the plaintiff accuses the defendant of age- and disability-based discrimination and related offenses.  The plaintiff raises five counts.[1]    First, the plaintiff alleges that the defendants discriminated against her in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), Pub. L. No. 90-202, 81 Stat. 602 (codified as amended at 29 U.S.C. § 621 et seq. (2006)), by terminating her without cause and because of her age and replacing her with younger employees.  Second, the

_____

[1]In the complaint, the plaintiff identifies six counts, but failed to include a count four.  In the report, the court uses the plaintiff's numbering.

plaintiff alleges that the defendants discriminated against her in violation of the Pennsylvania Human Relations Act of 1955, Pub. L. No. 744, Pa. Laws 222 (codified as amended at 43 PA. CON. STAT. ANN. § 955 (West 2006)).[2]  Third, the plaintiff alleges that the defendants discriminated against her in violation of the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101-336, 104 Stat. 327 (codified as amended at 42 U.S.C. § 12101 et seq. (2006)), by refusing to accommodate her actual and perceived permanent impairment even though she would have been able to perform her job with an accommodation.  There is no claim numbered four.  Fifth, the plaintiff alleges that the defendants discriminated against her in violation of the Family Medical Leave Act of 1993 ("FMLA"), Pub. L. No. 103-3, 107 Stat. 6 (codified as amended at 29 U.S.C. § 2601 et seq. (2006)), by refusing to allow the plaintiff to return to her previous or a similar position after returning from family medical leave.  Finally, the plaintiff accuses the defendant of the intentional infliction of emotion distress ("IIED") in violation of Pennsylvania common law. (Id.)

    In her prayer for relief, the plaintiff seeks several remedies.  She desires a declaratory judgment that the violations alleged in counts one through five in fact violated the relevant laws, and a permanent injunction enjoining the defendant from further violating the relevant laws.  She seeks an order

---

[2]The plaintiff subsequently withdrew count two of the complaint, and it will accordingly not be considered in this report except to the extent that the court recommends that it be dismissed.  (Doc. No. 12.)

requiring the defendant to eliminate the effects of the alleged violations and to ensure that they do not hereafter affect the plaintiff's employment opportunities, as well as restitution for lost wages and benefits.  She asks the court to award her the costs and fees of the instant litigation, front pay for wages and benefits that she would have earned in her former position from the day of trial until she turns at least sixty-five years old, and punitive and compensatory damages.  Finally, the plaintiff seeks any other relief that the court deems necessary and proper.  (Id.)

In response, the defendant filed on July 12, 2004, a motion to dismiss or, in the alternative, for summary judgment, along with a supporting brief, affidavits, exhibits, and a statement of facts.  (Doc. Nos. 4, 5, 6, 7, & 8.)  The plaintiff responded with a brief in opposition, exhibits, and an affidavit on September 9, 2004 and a counterstatement of material facts on September 29, 2004.  (Doc. Nos. 12, 16, 19, & 20.)  The defendant filed a reply brief on September 20, 2004.  (Doc. No. 15.)  On December 15, 2004, the court issued a report recommending that the motion be denied without prejudice to renewal at the close of discovery, which the district judge adopted on January 14, 2005.  (Doc. Nos. 21 & 22.)  Subsequently, the defendant answered the complaint on January 31, 2005.  (Doc. No. 23.)

On January 16, 2006, the defendant filed the instant motion for summary judgment with a brief in support, affidavits, exhibits, and a statement

of facts.  (Doc. Nos. 29, 30, 31, 32, 33, 34, 35, 45, 46, 47, & 48.[3])   The defendant first argues that it is an improper defendant because the plaintiff was actually employed by an independent subsidiary, the Pennsylvania, Ohio, and South Jersey Joint Board, not by it.  Second, the defendant argues that the plaintiff has failed to establish a prima facie case of discrimination in violation of the ADEA or that the defendant's nondiscriminatory reason for discharging the plaintiff was a pretext.  Third, the defendant argues that the plaintiff has failed to establish a prima facie case of discrimination in violation of the ADA.  Fourth, the defendant argues that it did not violate the FMLA because the plaintiff was discharged on grounds independent of her medical leave and the plaintiff has failed to establish a prima facie case of discrimination.  Finally, the defendant argues that the plaintiff's IIED claim is barred by the Commonwealth's Workers' Compensation Act of 1915, Pub. L. No. 736, Pa. Laws 338 (codified as amended at PA. STAT. ANN. tit. 77, § 1 et seq. (West 2006)), or that the plaintiff has failed to establish a prima facie case of IIED.  (Doc. No. 30.)

The plaintiff filed a brief in opposition and exhibits on March 2, 2006.

---

[3]Document Numbers 31, 32, 33, and 34 are the defendant's affidavits and supporting exhibits.  On March 2, 2006, the plaintiff filed a motion to strike the affidavits and supporting exhibits because of the defendant's failure to comply with the provisions of Federal Rule of Civil Procedure 56(c) and (e).  (Doc. Nos. 40 & 41.)   The defendant conceded that it had improperly submitted the affidavits and supporting exhibits (Doc. No. 49) and properly resubmitted them as Document Numbers 45, 46, 47, & 48. By separate order, the court denies the plaintiff's motion as moot.

(Doc. Nos. 42 & 43.)   The brief and exhibits attempt to controvert the defendant's arguments.  The plaintiff argues that she was an employee of the defendant.   The plaintiff further argues that she has, in fact, established a prima facie case of discrimination under the ADEA, the ADA, and the FMLA and that the defendant's purported nondiscriminatory reason for discharging her is pretextual.  Finally, the plaintiff argues that the Workers' Compensation Act does not bar her IIED claim and that she has established a prima facie case of IIED.  (Doc. Nos. 42 & 43.)

On March 20, 2006, the defendant requested oral argument pursuant to Local Rule 7.9, which the court has taken under consideration.  (Doc. Nos. 50 & 51.)

## II.   Standard of Review

Summary judgment is appropriate when the pleadings and any supporting materials, such as affidavits and other documentation, show that there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Furthermore, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Id</u>. at 324; <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990); <u>Pastore v. Bell Tel. Co. of Pennsylvania</u>, 24 F.3d 508, 511 (3d Cir. 1994) (quoting <u>Harter v. GAF Corp</u>., 967 F.2d 846, 852 (3d Cir. 1992)). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of any material fact, but the nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in the pleadings. <u>Celotex Corp.</u>, 477 U.S. at 323, 325; <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 248-52 (1986); <u>Young v. Quinlan</u>, 960 F.2d 351, 357 (3d Cir. 1992).

To determine whether the nonmoving party has met its burden, the court must focus on both the genuineness and the materiality of the factual issues raised by the nonmovant. "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 242, 247-48 (emphasis in original). A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 250. A disputed fact is material when it could affect the outcome of the suit under the

governing substantive law.   Anderson, 477 U.S. at 248.   If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).   All inferences, however, "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore, 24 F.3d at 512 (quoting Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)).

## III.   Factual Background

Based on all the submissions to the court, and in light of the standard for summary judgment, the court has compiled the following facts that are relevant to the recommendations made herein.   The plaintiff was born on March 16, 1950, and was fifty-two years old at the time relevant to her complaint.   She was hired by the defendant's predecessor union as a medical secretary at the defendant's clinic on February 11, 1969.   In August 1987, upon the clinic's closing, the plaintiff was transferred, first, to the defendant's Wilkes-Barre, Pennsylvania, office, and, then, to the Dunmore, Pennsylvania, office as a secretary.   She was the only clerk in the Dunmore office.   (Doc. Nos. 1, 43 exs. A, UU, & CCC.)

Prior to June 2002, when the facts giving rise to this case occurred, the plaintiff suffered from three medical conditions.  First, around 1995 or 1997, she was afflicted with a herniated disc.  Second, at some time prior to 2002, she developed arthritis in her back.  Third, in early 2002, she developed carpal tunnel syndrome.  As a consequence of the herniated disc and arthritis, the plaintiff could not lift more than twenty pounds.  The defendant did not require the plaintiff to lift more than twenty pounds.  On an insurance form, the plaintiff indicated that her job never required her to lift more than fifteen pounds.  As a consequence of the carpal tunnel syndrome, she was supposed to move around, although she was not limited in the performance of her duties.  (Doc. Nos. 43 exs. A, E, S, & CCC.)  In addition, in January 2002, the plaintiff apparently slipped on ice at the office, which aggravated her back condition.  She also underwent occupational therapy for the carpal tunnel syndrome.  She applied for workers' compensation because of ongoing pain, but the claim was denied.  The plaintiff's supervisor, Phyllis Burns, the defendant's district manager based in Dunmore, and David Melman, vice president of the defendant based in Philadelphia, Pennsylvania, were aware of the plaintiff's health problems.  (Doc. No. 43 exs. R, S, T, & CCC.)

The record also indicates that, prior to her discharge, the plaintiff and Ms. Burns did not get along.  A memorandum from Ms. Burns to the plaintiff in June 2002 lists various incidents dating back to June 2000 and warned the plaintiff that any further incidents could result in disciplinary action.  (Doc. No.

8

43 ex. M.)  The plaintiff apparently sent a response to this memorandum to Mr. Melman.  (Doc. No. 43 ex. N.)  Ms. Burns responded to Mr. Melman with respect to the plaintiff's letter.  (Doc. No. 43 ex. O.)  Also in June 2002, Ms. Burns e-mailed Mr. Melman concerning the plaintiff's incurment of high costs in accessing the Internet.  She commented that the plaintiff "is taking up way too much of my time and I pray for her departure."  (Doc. No. 43 ex. VV.)

On June 24, 2002, the plaintiff notified Ms. Burns that she was taking leave to see a doctor concerning a newly developed medical condition, which later turned out to be a colon injury.  The plaintiff had suffered various problems for approximately two months prior to June 24, 2002, and had visited doctors because of the problems.  The plaintiff acknowledged that her call on June 24, 2002, was the first time Ms. Burns was informed that the plaintiff had any medical problem other than the herniated disc, arthritis, and carpal tunnel syndrome.  During the week, the plaintiff kept Ms. Burns informed about her ongoing medical tests.  Subsequently, on June 28, 2002, the plaintiff notified Ms. Burns that she was being hospitalized for her medical condition and would require surgery.  Ms. Burns informed her that she would be receiving a letter from Mr. Melman that she was being discharged effective July 26, 2002.  On July 10, 2002, the plaintiff had her doctor send the defendant a letter confirming the plaintiff's condition and the necessity of surgery.  The doctor estimated that the plaintiff would be unable to return to work until October 9, 2002.  (Doc. Nos. 1, 43 exs. A, SS, AAA, & CCC.)

9

The plaintiff was in the hospital for "[c]lose to three weeks" after June 28, 2002, and was unable to work for some period thereafter. (Doc. Nos. 43 ex. A.)  She received her full, usual wages and employment benefits for the entire time from June 24, 2002, until her discharge was effective on July 28, 2002.  At no point did the plaintiff request leave under the FMLA or any applicable provision of her union employment contract. (Doc. No. 43 exs. A & CCC.)

The discharge letter from Mr. Melman, dated June 28, 2002, stated that the discharge was part of a downsizing program implemented due to a decline in membership.  Because of the plaintiff's seniority–she was the most senior clerk in the defendant–Mr. Melman offered the plaintiff the option of relocating to the Johnstown, Reading, or Harrisburg offices.  The plaintiff rejected the offer because of her health problems. The plaintiff believes that Mr. Melman's offer to relocate the plaintiff to Johnstown, Reading, or Harrisburg was insincere because he knew then that those offices would be closed.  She further believes that she should have been allowed to "bump" one of the clerks in the defendant's Allentown or Philadelphia offices. (Doc. Nos. 1, 43 exs. A & CCC, & 45.)

On July 12, 2002, the plaintiff was sent a copy of an agreement for termination of employment and general release, which was signed by Mr. Melman.  It stipulated that, in return for waiving any claims under the ADA, FMLA, and other civil rights statutes, the plaintiff would receive monetary

10

compensation for unused vacation, severance pay, and health insurance for nine months after her discharge.  The copy in the record indicates that the plaintiff did not sign the contract.  (Doc. Nos. 43 exs. C & RR.)

The plaintiff believes that Mr. Melman made the decision to discharge her in consultation with Ms. Burns.  She believes that the two spoke concerning her discharge at a management retreat held the weekend before she called in sick on June 24, 2002.  She further believes that Mr. Melman made a final decision to discharge her after she called in sick.  The plaintiff cannot state positively that Mr. Melman knew of her medical condition at the time he decided to discharge her, but she believes he may have known because Ms. Burns "called him constantly."  (Doc. No. 43 exs. A & CCC.)

The plaintiff's duties continued to be required and were shifted to the defendant's Harrisburg, Pennsylvania, office.   The three clerks at the Harrisburg office were 41, 53, and 54.  (Doc. Nos. 1, 43 exs. A & CCC.)

At the time the plaintiff was discharged, the defendant was attempting to acquire a new member with 1,000 employees.  Other of the prospective member's facilities were members, and the plaintiff believed the defendant was confident of acquiring the new member.  However, at the time she was discharged, the plaintiff was aware that the defendant's membership was declining.  (Doc. Nos. 1, 31 ex. E, & 43 exs. A & CCC.)

The defendant, according to a decision made by Mr. Melman in 2001, decided to reduce its expenditures because of declining membership.  In

1998, the defendant had 11,594 members.  By 2002, the defendant had 8,289 members, which further declined to 7,636 members by 2004.  Because of the declining numbers, the defendant undertook cost-cutting measures, including closing offices and reducing the number of employees.  It began closing offices in June 2002 and reducing the number of employees in January 2002. (Doc. Nos. 45 & 46.)

Mr. Melman decided to "centralize administrative functions and to eliminate positions at the Reading, Johnstown and Dunmore Offices" in March or April 2002 and informed the union representative, pursuant to the clerical agreement, in May 2002. (Doc. Nos. 45 & 46.)  He informed Ms. Burns of his decision to eliminate the clerk position in Dunmore on June 27 or 28, 2002. (Doc. No. 45.)

Subsequent to the plaintiff's discharge, pursuant to the defendant's reduction in force, the Reading office was closed in December 2002, the Johnstown office was closed in September 2003, and the Harrisburg office was closed in December 2003.  In addition, the South Jersey office had been closed in June 2002, and the Cleveland office had been closed in October 2002.  The Dunmore office remains open. (Doc. Nos. 43 exs. A, W, X, & CCC & 45.)

As part of the defendant's reduction in force, thirteen clerks were discharged by termination or voluntary early retirement between January 2002 and September 2005.  Four clerks were discharged before the plaintiff

12

between January and June 2002.  Two clerks were discharged in December 2002.  Four clerks, including the three who assumed the plaintiff's duties, were discharged in 2003.  One clerk was discharged in 2005.  (Doc. Nos. 43 exs. A, W, X, & CCC & 45.)

At the time the plaintiff was discharged, the ages of the clerks who had already been discharged were 40, 42, 65, and 66.  The ages of the clerks discharged in 2002 after the plaintiff were 47 and 40.  The ages of the clerks discharged in 2003 were 54, 55, 45, 41, and 53.  The final discharged clerk was 45 in June 2002. The defendant presently employs only three clerks, one in Philadelphia and two in Allentown.  Their ages as of the plaintiff's discharge were 43, 47, and 47.

With these facts in mind, and in consideration of the parties' arguments and submissions, the matter is now ripe for review, and the court turns to the merits of the instant motion.   Preliminarily, the court addresses the defendant's primary argument regarding the proper defendant.  Although the parties have argued considerably on the issue of who the plaintiff's proper employer was–the defendant or the Joint Board–the court will not address those arguments here because it is unnecessary for the resolution of the instant motion.  The court notes, however, its dismay at the strenuousness with which the defendant has advanced the contention.  The defendant's argument that the defendant is not the proper employer appears ill informed at best and disingenuous at worst.  The plaintiff has properly pointed to

13

significant evidence that the defendant may well be the proper defendant, including, for example, her termination agreement, which states the parties as the plaintiff and the defendant and is signed by Mr. Melman on behalf of the defendant.   However, even discounting the probable fallaciousness, if not falsity, of that argument, the count finds that the defendant is entitled to summary judgment as a matter of law on all the counts raised by the plaintiff. The court also notes that, based on its findings and recommended disposition, it is not necessary to grant the defendant's request for oral argument.

## IV.    Discussion

### A.    The ADEA Claim (Count One)

The ADEA provides that it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  An employer violates the ADEA if he is "'actually motivated'" to discriminate against an employee on the basis of the employee's age or disability.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).  In reviewing a motion for summary judgment to determine if there is a genuine issue of material fact concerning whether an employer illegally discriminated against an employee, the court must apply the test articulated by the Supreme

14

Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and refined in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).  Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003); Tomasso v. Boeing Co., 445 F.3d 702, 706 (2006) (citing Fuentes v. Perskie, 32 F.3d 759 (3d Cir.1994)); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) (where parties did not dispute application of McDonnell Douglas test, Supreme Court assumed, arguendo, that it applied to ADEA claim); Walton v. Mental Health Ass'n. of Southeastern Pennsylvania, 168 F.3d 661, 666 (3d Cir. 1999) ("'[I]n the context of employment discrimination, the ADA, ADEA and Title VII all serve the same purpose–to prohibit discrimination in employment against members of certain classes.  Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well. Indeed, we routinely use Title VII and ADEA caselaw interchangeably, when there is no material difference in the question being addressed.'") (quoting Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 157 (3d Cir.1995)).   The McDonnell Douglas test "'establishe[s] an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'"[4] Reeves, 530 U.S. at 142 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)) (internal omission in original).

---

[4]The burden of persuasion always remains upon the plaintiff.  Reeves, 530 U.S. at 143 (citing Burdine, 450 U.S. at 254).

The plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination. Reeves, 530 U.S. at 142 (citing St. Mary's Honor Ctr., 509 U.S. at 506; Burdine, 450 U.S. at 252-53). A prima facie case requires the plaintiff to prove four elements. First, the plaintiff must establish that he belongs to the class protected by the ADEA–employees above forty years old. 29 U.S.C. § 631(a); Reeves, 530 U.S. at 142; Tomasso, 445 F.3d at 706 n.4 (citing Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002)); Walton, 168 F.3d at 668 (citing Lawrence v. Nat'l Westminster Bank New Jersey, 98 F.3d 61, 68 (3d Cir.1996)). Second, the plaintiff must establish that he is qualified for the position. Reeves, 530 U.S. at 142; Tomasso, 445 F.3d at 706 n.4 (citing Fakete, 308 F.3d at 338); Walton, 168 F.3d at 668 (citing Lawrence, 98 F.3d at 68). Third, the plaintiff must establish that he was dismissed in spite of being qualified. Reeves, 530 U.S. at 142; Tomasso, 445 F.3d at 706 n.4 (citing Fakete, 308 F.3d at 338); Walton, 168 F.3d at 668 (citing Lawrence, 98 F.3d at 68).

The fourth element concerns the defendant's replacement of the plaintiff and takes two slightly different forms depending on the circumstances of the discharge. In a simple discharge case, the plaintiff must establish that he was replaced by someone sufficiently younger as to create an inference of discrimination. Reeves, 530 U.S. at 142; Tomasso, 445 F.3d at 706 n.4 (citing Fakete, 308 F.3d at 338); Walton, 168 F.3d at 668 (citing Lawrence, 98

F.3d at 68).  However, in a case involving a reduction in force ("RIF"),[5] this

element is modified to require that the plaintiff to establish that "'the employer

retained someone similarly situated to him who was sufficiently younger.'"[6]

Monaco v. American Gen'l Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004)

(quoting Anderson v. Consol. Rail Corp., 297 F.3d 242, 250 (3d Cir. 2002)).

In respect of the "sufficiently younger" standard that applies to both

variations of the fourth element, "'there is no particular age difference that

must be shown, but while different courts have held . . . that a five year

difference can be sufficient, . . . a one year difference cannot.'"  Id. at 307

(quoting Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d

Cir.1999)) (omissions in original).  In respect of the "similarly situated"

---

[5]Although it seems self-evident, "'[a] work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company.'"  Bearley v. Friendly Ice Cream Corp., 322 F.Supp.2d 563, 575 (M.D. Pa. 2004) (quoting Barnes v. GenCorp Inc., 896 F.2d 1457 (6th Cir.), cert. denied, 498 U.S. 878 (1990)); accord, LeBlanc v. Great American Ins. Co., 6 F.3d 836, 845 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994).

[6]Citing Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 234-35 (3d Cir. 1999), the Third Circuit in Tomasso, 445 F.3d at 706 n.4, listed the fourth element in a RIF case as requiring the plaintiff to show that the employer "retained employees who do not belong to the protected class."  But a reading of Showalter makes clear that the court in Tomasso misread Showalter.  In fact, the Third Circuit in Showalter explicitly rejected the standard listed in Tomasso and adopted a "sufficiently younger" standard. See Showalter, 190 F.3d at 235 ("[W]e hold that the District Court should have applied the 'sufficiently younger' standard instead of the 'unprotected class membership' standard.") (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308 (1996)).

component of the RIF standard, the retained employee must be in a comparable position to the position the plaintiff held before being discharged. Anderson v. Consol. Rail Corp., 297 F.3d at 249-50.  The court "must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace.  This determination requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner."  Monaco, 359 F.3d at 305 (citing Anderson, 297 F.3d at 250).

If the plaintiff makes his prima facie showing, there is a presumption of discrimination.  St. Mary's Honor Ctr., 509 U.S. at 506 (citing Burdine, 450 U.S. at 254).   The burden then shifts to the defendant to rebut the presumption by "produc[ing] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves, 530 U.S. at 142 (citing Burdine, 450 U.S. at 254).  The defendant's burden is "'relatively light.'"  Tomasso, 445 F.3d at 706 (quoting Fuentes, 32 F.3d at 763).  If the defendant produces evidence of a nondiscriminatory reason for the challenged conduct, the presumption "'drops from the case.'" St. Mary's Honor Ctr., 509 U.S. at 507 (quoting Burdine, 450 U.S. at 255).

The burden of production then returns to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason is pretextual and "'unworthy of credence.'"  Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 256).  To show that the defendant's rationale is

18

pretextual, the plaintiff must adduce evidence "'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Tomasso, 445 F.3d at 706 (quoting Fuentes, 32 F.3d at 764).  It is not enough for the plaintiff to show that the defendant was "'wrong or mistaken'" in his action.  Id. (quoting Fuentes, 32 F.3d at 764).  Rather, to defeat summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Fuentes, 32 F.3d at 765 (internal quotations and citation omitted) (bracketed material in original) (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir.1993); Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 527, 531 (3d Cir. 1992), cert. denied, 510 U.S. 826 (1993); Chauhan v. M. Alfieri Co., Inc., 897 F.2d 123, 128 (3d Cir. 1990)); see Tomasso, 445 F.3d at 706 (citing Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005)); cf. id. at 704 ("First, [the plaintiff] has shown sufficient implausibilities and inconsistencies in [the defendant's] primary rationales to avoid summary judgment. Second, a rational factfinder could dismiss the secondary reasons as pretextual, not because they played no role in [the plaintiff's] layoff but because they cannot

19

explain the layoff sufficiently.").

In this case, the court finds that the plaintiff has not established a prima facie case of age-based discrimination.  The parties do not dispute the first three elements of a prima facie ADEA case here, but they contest the fourth element.  First, the court must consider which of the two variations of the fourth element applies in this case.[7]  The record convinces the court that the RIF standard applies.  The defendant and its employees attest that it began reducing its workforce in January 2002 and closing offices in June 2002 because of a reduction in membership.  Three offices closed in 2002, one before and two after the plaintiff's discharge, and two offices closed in 2003. Between January 31, 2002, and the date on which the plaintiff was terminated, four clerks were discharged or accepted early retirement buyouts. Between the date on which the plaintiff was discharged and December 31, 2003, an additional seven clerks were terminated or bought out.

The plaintiff unconvincingly asserts that the defendant was not reducing

---

[7]The parties have not discussed the two standards.  In its brief, the defendant misstates the simple-discharge standard: the plaintiff "must demonstrate that: . . . (4) under circumstances [sic] the actions of the International raise an inference of discriminatory action–that is, the International replaced Revit with a person outside the protected class." (Doc. No. 30 (citing Williamson v. Penn Millers Ins. Co., 2005 WL 3440633 (M.D. Pa. 2005).)   The plaintiff also argues the simple-discharge standard, mistakenly stating that "[a] Complainant can satisfy the fourth prong . . . simply by showing that . . . the employer had a continued need for someone to perform the work." (Doc. No. 42 (citing Pivirotto v. Innovative Systems, Inc., 191 F.3d 344 (3d Cir. 1999).)   Because the Court of Appeals has distinguished between simple-discharge and RIF-discharge cases, the court addresses the proper variant here.

its workforce because, at the time she was discharged, the defendant was attempting to obtain a new member with 1,000 employees, some of whose other facilities were also members of the defendant.   But the plaintiff's unsubstantiated assertion is implausible, and she has submitted no evidence on this point to support her claim.   Indeed, the plaintiff conceded that membership prior to her discharge had declined, and the defendant's affidavits support the contention.   Furthermore, at the time the plaintiff was discharged, the defendant had not obtained the new member.

Having determined that the RIF standard applies, the court must next evaluate whether the plaintiff has shown by a preponderance of the evidence that the defendant discharged her while retaining similarly situated and sufficiently younger employees.   There is no dispute about the proper pool of similarly situated employees.   Both parties compare the plaintiff to the defendant's other clerks, and the court finds their pool appropriate in light of Monaco and Anderson.

At the time she was discharged, the plaintiff was 52.   The clerks who assumed her duties were 41, 53, and 54.   Taken individually, the latter two clerks are clearly not sufficiently younger–indeed, they are older–, while the former clerk may be.   But in consideration of the totality of the circumstances here, see Shaner v. Synthes, 204 F.3d 494, 503 n.9 (3d Cir. 2000) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.") (citing Woodson v. Scott Paper Co., 109 F.3d 913, 921

21

(3d Cir.), cert. denied, 522 U.S. 914 (1997)), the court finds that the three clerks retained by the defendant, taken together, are not sufficiently younger as to create a genuine issue of material fact in respect of age discrimination. Moreover, considering the ages of all the discharged and retained clerks, it becomes even clearer that, taken together, there is no prima facie case.   No reasonable finder of fact could conclude that the plaintiff was the victim of age discrimination in a situation where the defendant retained two similarly situated, older employees and only one similarly situated employee who could be considered significantly younger.

In addition, the court finds that, assuming, arguendo, the plaintiff could establish a prima facie case, the plaintiff has failed to show by a preponderance of the evidence that the defendant's proffered reason for her discharge is pretextual.   Assuming a presumption of discrimination, the defendant has rebutted it by presenting a legitimate, nondiscriminatory reason–the RIF.   As discussed above, the defendant has submitted ample evidence that it undertook a RIF in response to declining membership, a fact that the plaintiff acknowledges.   Thus, the presumption of discrimination disappears in this case, and the plaintiff bears the burden of producing sufficient evidence to persuade the finder of fact that the defendant's explanation is pretext.   The plaintiff has not produced any contradictory evidence.   Her claim that the RIF is a pretext is based merely on her unsupported supposition–her belief–, and such a bald assertion, without more,

cannot raise a genuine issue of material fact to survive summary judgment. No reasonable finder of fact, in consideration of the plaintiff's failure to adduce more than a mere scintilla of evidence and the defendant's evidence of the RIF surrounding the plaintiff's discharge, could find the defendant's preferred reason to be implausible or inconsistent.   Consequently, the court recommends that the defendant's motion for summary judgment be granted with respect to count one of the plaintiff's complaint, alleging that the defendant discriminated against her based on her age in violation of the ADEA, and count one be accordingly dismissed.

## B.    The ADA Claim (Count Three)

The ADA provides, in part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[8] 42 U.S.C. § 12112(a).  As with the ADEA, an employer violates the ADA if he is "'actually motivated'" to discriminate against an employee on the basis of the employee's disability. Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (quoting Hazen Paper Co., 507 U.S. at 610 (1993)).  Also as with the ADEA, the court considers a

---

[8]A "covered entity" is "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2). The parties do not dispute that the defendant is a "covered entity."

23

claim alleging a violation of the ADA based upon circumstantial evidence under the McDonnell Douglas test described above. Id. at 49 n.3; Shaner, 204 F.3d at 500 (citing Walton, 168 F.3d at 667-68; Krouse v. American Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997); Newman, 60 F.3d at 156-58).

The distinction between an ADEA and ADA case is in the elements the plaintiff must prove by a preponderance of the evidence to establish a prima facie case. In a disparate treatment claim brought under the ADA, the plaintiff must establish by a preponderance of the evidence three elements. First, the plaintiff must establish that he is disabled within the meaning of the ADA. Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)); Shaner, 204 F.3d at 500 (citing Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir.1998)). Under the ADA, as pertinent to this case, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," 42 U.S.C. § 12102(2)(A), or "being regarded as having such an impairment," id. § 12102(2)(C).

The threshold to be considered disabled under the ADA is high. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002). Under 42 U.S.C. § 12101(2)(A), the major life activity pertinent to this case is "performing manual tasks." See 29 C.F.R. § 1630.2(I) (2006); Toyota Motor Mfg., 534 U.S. at 195. "[T]o be substantially limited in performing manual

24

tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., 534 U.S. at 198; see 29 C.F.R. § 1630.2(j). Furthermore, "[t]he impairment's impact must also be permanent or long term." Id.; see 29 C.F.R. § 1630.2(j)(2)(ii)-(iii). "As a matter of law, a 'transient, nonpermanent condition,' McDonald v. Commonwealth, 62 F.3d 92, 94-97 (3d Cir.1995), or 'a temporary, non-chronic impairment of short duration,' Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir.2002), . . . fall short of substantially limiting an individual in a major life activity." Williams, 380 F.3d at 765. The court must evaluate the circumstances of the temporary impairment to determine if it substantially limits the performance of manual tasks. Id.; see 29 C.F.R. § 1630.2(j)(2). Under 42 U.S.C. § 12101(2)(C), an individual is considered disabled if, regardless of whether he has a substantially limiting physical impairment, he is treated as though he has a qualifying disability. 29 C.F.R. § 1630.2(l).

Second, he must establish that he is a qualified individual within the meaning of the ADA. Williams, 380 F.3d at 761 (citing Taylor, 184 F.3d at 306); Shaner, 204 F.3d at 500 (citing Gaul, 134 F.3d at 580). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Finally, the plaintiff must establish that he has suffered an "'adverse employment

25

decision as a result of discrimination.'" <u>Williams</u>, 380 F.3d at 761 (quoting

<u>Taylor</u>, 184 F.3d at 306); <u>Shaner</u>, 204 F.3d at 500 (citing <u>Gaul</u>, 134 F.3d at

580).  An "adverse employment decision" includes an employer's failure to

accommodate reasonably the employee's disability.  <u>Williams</u>, 380 F.3d at

761 (citing <u>Taylor</u>, 184 F.3d at 306).

In this case, the court finds that the plaintiff has failed to establish a

<u>prima facie</u> case of disability discrimination under the ADA.  This is true

whether the defendant was actually disabled under the ADA or was merely

perceived as being disabled and treated accordingly.[9]  Thus, the analysis for

both 42 U.S.C. § 12102(2)(A) and (C) is the same.  Preliminarily, the court

notes that the plaintiff does not specify her alleged disability or disabilities in

the complaint and, in her brief in opposition to the instant motion, only

identifies the alleged disabilities on the ninth page of the sections discussing

the ADA.  Even in that instance, the plaintiff barely addresses her alleged

disabilities.  However, there are two possible classes of disability at issue

here, and the court will address both.[10]

_____

[9]The parties argue over the admissibility of the plaintiff's submissions to
the Equal Employment Opportunity Commission ("EEOC"), in which the
plaintiff stated that she was not disabled but was perceived as being disabled
because of her colon surgery and to which the EEOC concluded that she was
not disabled under the ADA because "of the temporary nature of [her]
disability and the absence of limitations resulting from [her] surgery."  (Doc.
Nos. 12 exs. E & F & 34 ex. G.)  The court avoids the controversy because
the EEOC documentation is not necessary for the resolution of this case.

[10]In her EEOC submissions, the plaintiff identified her disability as her
colon condition, but in her brief she disputes the defendant's characterization

The first class of potentially relevant disabilities is the alleged disabilities that the plaintiff suffered before June 2002: a herniated disc, arthritis, and carpal tunnel syndrome.  Only the first and third elements of a prima facie case are relevant here because the second element is not at issue.  First, the plaintiff cannot show that these conditions are a qualifying disability under the ADA because they did not substantially limit her ability to perform the manual tasks required by her position at the defendant.  She acknowledges that the only limitation imposed by the conditions was that she could not lift more than twenty pounds, and she further acknowledges that her duties never required her to lift more than twenty pounds.

Second, even assuming that the conditions were qualified disabilities under the ADA, the plaintiff cannot establish that she suffered an adverse decision because of them.  The plaintiff alleges two adverse actions: her discharge and the defendant's failure to accommodate her conditions.  With respect to her discharge, the plaintiff has adduced no evidence whatsoever that she was discharged because of these conditions.  Indeed, the record is bare of even a scintilla of evidence that would indicate that the defendant discharged her because of these conditions, and no reasonable factfinder could determine otherwise. The record, and the plaintiff's statements, indicate that, to the extent she was debilitated by her conditions, the defendant

_____

to that as her only disability and refers to other conditions. (Doc. Nos. 12 exs. E & F & 34 ex. G.)

accommodated her, and nothing in the record establishes that, after tolerating her conditions for, in one instance, several years, and, in the other two, several months, the defendant suddenly reversed course and discharged her therefor.

With respect to the failure to accommodate, the plaintiff has adduced no evidence that the defendant did not accommodate her conditions. She admits that these conditions posed no problem to the plaintiff's performance between their onset and her discharge. She further admits that the defendant never required her to lift more than twenty pounds.

The second class of disability is the plaintiff's colon surgery, which necessitated the plaintiff's medical leave during which she was discharged. Again, only the first and third elements of the prima facie case are relevant here. First, the plaintiff cannot establish that her colon condition is a qualifying disability under the ADA. Although the colon condition substantially impaired the plaintiff's ability to perform manual tasks because she was in the hospital and recovering for a few months, it was not a permanent or long-term disability. The plaintiff was incapacitated for three and one-half months and made a complete recovery in that time. She has not produced any evidence showing that the condition is covered under the ADA because of its duration. As the Supreme Court noted in Toyota Motor Mfg., 534 U.S. at 198, the ADA is designed to help a narrow class of people who are truly disabled over a long period of time or forever, not the large class of people who undergo

28

relatively common procedures or suffer from relatively common conditions. While surgery such as the plaintiff underwent is a serious matter, it is not a disabling procedure as the ADA is meant to address.

Second, the plaintiff cannot show that the defendant either refused to accommodate her colon condition or discharged her because of it.   With respect to the defendant's alleged failure to accommodate her, the plaintiff acknowledges that she was given paid leave from the time she called in sick until she was discharged.   The court recognizes that the plaintiff was discharged while she was recovering from the surgery, but, as discussed below, she cannot show a nexus between her surgery and a failure to accommodate her or her discharge.   There is no evidence except for the plaintiff's averment that the defendant discriminated against her because of her surgery-related leave.

Even assuming, arguendo, that the plaintiff has made out a prima facie case of discrimination under the ADA, the defendant has rebutted that presumption by proffering a legitimate, nondiscriminatory reason for discharging her.  As discussed above in respect of the ADEA, the defendant has adduced sufficient evidence of a RIF, and the plaintiff has adduced no evidence from which a reasonable factfinder could believe the RIF to be pretextual. Consequently, the court recommends that the defendant's motion for summary judgment be granted with respect to count three of the plaintiff's complaint, alleging that the defendant discriminated against her based on her

29

actual or perceived disability in violation of the ADA, and count three be accordingly dismissed.

### C.    The FMLA Claim (Count Five)

The FMLA provides that an eligible employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . because of a serious health condition that makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D); see Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). An employee's right to leave under the FMLA cannot be waived or bargained away. 29 C.F.R. § 825.220(d). In addition, the employee need not request leave under the FMLA, but need only request leave under circumstances that indicate it is FMLA eligible. Id. § 825.302(c).

The burden is on the employer to ensure that the employee is aware of his rights under the FMLA and that qualifying leave is designated as FMLA leave. The employer must post a conspicuous notice in the workplace. Id. § 825.300(a). He must also inform the employee of his rights under the FMLA in a handbook that describes benefits, if provided, id. § 825.301(a)(1), or, otherwise, at the time an employee requests leave, id. §825.301(a)(2). After the employee requests leave, the employer must within a reasonable time provide the employee with "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure

to meet these obligations," including whether the leave will be counted as FMLA leave and the employee's right to restoration. Id. § 825.301(b)(1). "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section." Id. § 825.208. After taking leave under the FMLA, the employee is "entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions." Callison, 430 F.3d at 119 (citing 29 U.S.C. § 2614(a)(1)).

The FMLA provides various protections for employees who are eligible for or have taken FMLA leave.[11] See 29 U.S.C. § 2615; 29 C.F.R. § 825.20. Two protections are relevant here. First, under the "entitlement" or "interference" provision, it is illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1); see Callison, 430 F.3d at 119; Conoshenti, 364 F.3d at 141-42; Bearley, 322 F.Supp.2d at 570-71. "Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the

---

[11]Courts have taken different analytical approaches to the FMLA protections and their statutory and regulatory sources. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 n.9 (3d Cir. 2004) ("The circuits have taken diverging paths in analyzing claims that an employee has been discharged in retaliation for having taken an FMLA leave.") (collecting cases). In all cases, though, regardless of how they analyzed the statute and regulations, the courts have found that retaliatory discharge is unlawful. Id. The court here has based its approach on its reading of the FMLA as well as on the approach taken by other courts. See, e.g., id.; Bearley, 322 F.Supp.2d at 570-71.

exercise of rights provided by the" FMLA.  29 C.F.R. § 825.220(b).  To establish a violation of the entitlement provision, an employee need only show that he was entitled to FMLA benefits, 29 U.S.C. § 2612(1), and the employer interfered with them, 29 U.S.C. § 2614(a)(1).  Callison, 430 F.3d at 119.  "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  Id. at 120.  Consequently, it is irrelevant whether the employer had a legitimate reason to deny the benefits or treated disparately or similarly other employees.[12]  Id. at 119-20.

Interference with an employee's rights includes an employer's failure to advise the employee of his rights under the FMLA.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 142-43 (3d Cir. 2004).  However, to prevail on an interference claim based on a failure to advise, the employee must show prejudice by "establish[ing] that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury."  Id. at 143-44.

Second, under the "discrimination" or "retaliation" provision, an employer is prohibited from discriminating against an employee because the employee "oppos[ed] any practice made unlawful by" the FMLA or exercised his FMLA rights. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c); see Callison, 430 F.3d at 119; Conoshenti, 364 F.3d at 146; Bearley, 322 F.Supp.2d at 570-71.

---

[12]This means the McDonnell Douglas burden-shifting test does not apply.

Discrimination includes the failure to reinstate an employee after he has taken FMLA leave.   However, an employee is not entitled to reinstatement "to a right, benefit or position to which the employee would not 'have been entitled had the employee not taken the leave.'" Conoshenti, 364 F.3d at 141 (quoting 29 U.S.C. § 2614(a)(3)(B)); see id. ("Thus, for example, if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement.") (citing 29 C.F.R. § 825.216(a)(1)).

The regulations implementing the FMLA elaborate on this exception to the right of reinstatement:

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.  An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

Id. § 825.216(a).  As an example, the regulations provide:

> If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits and restore the employee cease at the time the employee is laid off, provided the employer has no continuing obligations under a collective bargaining agreement or otherwise. An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

Id. § 825.216(a)(1).

Because a discrimination claim involves disparate treatment, the McDonnell Douglas test applies.  See Reeves, 530 U.S. at 142; Walton, 168

33

F.3d at 666.  To establish a <u>prima facie</u> case, the plaintiff must establish three elements by a preponderance of the evidence.   First, the plaintiff must establish that he took FMLA-eligible leave.  <u>Conoshenti</u>, 364 F.3d at 146. Second, the plaintiff must establish that he "suffered an adverse employment decision." <u>Id.</u> Finally, the plaintiff must establish that the adverse employment decision was "causally related to his leave."  <u>Id.</u>

In this case, with respect to the interference prong of the FMLA protections,[13] the court finds that the defendant did not prejudicially interfere with the plaintiff's rights under the FMLA.  There is no dispute that the plaintiff was an eligible employee who had a serious health condition at the time she took leave.  Thus, the first element of the interference theory is established. In examining the second element, it appears that the defendant failed to accord the plaintiff her rights under the FMLA.  There is no evidence that the defendant fulfilled its obligations under the act and its implementing regulations when the plaintiff requested leave, and, at least for purposes of this motion, the court will construe that absence in favor of the plaintiff.  The court further notes that the defendant's argument that the plaintiff has no claim under the FMLA because she did not request FMLA leave is patently incorrect.

---

[13]In the complaint, the plaintiff raises count five solely as a claim of failure to reinstate.  But in the brief in opposition to the instant motion, the plaintiff discusses the defendant's failure to advise the plaintiff of her rights. Consequently, the court will address both protections.

Nonetheless, although the defendant violated the FMLA, the plaintiff suffered no prejudice because of the violation, and the claim cannot sustain summary judgment.  The defendant's failure to advise the plaintiff of her FMLA rights in no way hindered her ability to take medical leave.  Indeed, the defendant allowed her to take four weeks of paid leave prior to discharge.  Regardless of whether that leave was considered FMLA leave or leave under the plaintiff's benefits plan, the plaintiff was given necessary leave.  No reasonable factfinder could find a genuine issue of material fact to the effect that the defendant prejudicially interfering with the plaintiff's rights under the FMLA.

With respect to the discrimination prong of the FMLA, the court finds that the plaintiff has failed to establish a prima facie case of discrimination. The first two elements are undisputed: the plaintiff's leave qualified as FMLA leave, and the plaintiff's discharge was an adverse employment decision. However, the plaintiff cannot establish that the two are causally linked.  There is no evidence showing a nexus between the leave and the discharge.  As discussed above, under the ADEA and ADA, the evidence shows that the plaintiff was discharged pursuant to a RIF.  Although the plaintiff was on medical leave, the defendant had the right not to reinstate her–to discharge her–so long as the medical leave was not the basis for the discharge.  The plaintiff has adduced no evidence that shows her medical leave was the basis for the discharge.  Rather, the evidence shows the  discharge occurred during

a RIF that was planned and implemented before the plaintiff's medical condition arose.

Even assuming, <u>arguendo</u>, that the plaintiff can establish a <u>prima facie</u> case, the defendant, as discussed above, has rebutted the presumption of discrimination by proffering evidence of a legitimate, nondiscriminatory basis for the discharge.  The plaintiff has adduced no evidence to establish that the RIF was merely a pretext to hide her illegal discharge on the basis of her medical leave.  Consequently, the court recommends that the defendant's motion for summary judgment be granted with respect to count five of the plaintiff's complaint, alleging that the defendant discriminated against her based on her medical leave in violation of the FMLA, and count five be accordingly dismissed.

### D.    The IIED Claim (Count Six)[14]

The Pennsylvania Supreme Court has not yet recognized the tort of intentional infliction of emotional distress ("IIED"), but the Superior Court has and the Third Circuit has predicted that the Supreme Court would adopt the RESTATEMENT (SECOND) OF TORTS § 46, which provides, "One who by extreme

---

[14]As noted above, in addition to arguing whether the facts underlying the plaintiff's complaint meet the standard for IIED, the plaintiff and defendant dispute whether the Workers' Compensation Act provides the exclusive remedy for IIED and, thus, bars the claim here.  The court need not address the parties' arguments on the issue because of the findings discussed in this section.

and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Clark v. Township of Falls, 890 F.2d 611, 622-23 (3d Cir. 1989) (citing Kazatsky v. King David Mem'l Park, Inc., 515 Pa. 183 (1987)).  Outrageous or extreme conduct is behavior so outrageous or so extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988); Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa.Super. 2005) (internal citation omitted).  "Pennsylvania courts have been chary to declare conduct 'outrageous' so as to permit recovery," and "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery." Cox, 861 F.2d at 395-96 (stating that terminating an employee with an "improper motive and notwithstanding the potential effects" on him was not outrageous).  In addition, the harm suffered by a plaintiff must go beyond mere emotional distress and include some physical injury.  Swisher, 868 A.2d at 1230.  The alleged severe emotional distress must be "supported by competent medical evidence." Kazatsky, 515 Pa. at 197.

In this case, the plaintiff has not adduced any of the requirements to state a claim for IIED.  The defendants' alleged conduct is not outrageous or extreme under Pennsylvania's and the Third Circuit's jurisprudence.  The plaintiff has failed to allege either severe emotional distress or any physical

injury caused by the defendant.  Finally, she has not adduced that there is any medical evidence to substantiate a claim of emotional distress.  Consequently, the court recommends that the defendant's motion for summary judgment be granted with respect to count six of the plaintiff's complaint, alleging that the defendant intentionally inflicted emotional distress, and count six be accordingly dismissed.

In conclusion, the court notes that the plaintiff's experience with the defendant in June and July 2002 was unfortunate and bitter.  It further notes that the plaintiff had a bad relationship with her supervisor, Ms. Burns.  The poor working relationship may have informed the defendant's decision to discharge the plaintiff, though there is only circumstantial evidence and inference to support that.  But even if that is true, that is not discrimination under any of the statutes raised here.  As sorry as the court or any observer may feel for one in the plaintiff's position, the law is clear that she has not made out a claim under either the ADEA, the ADA, the FMLA, or the common law of IIED.

**V.    Conclusion**

On the basis of the foregoing, **IT IS RECOMMENDED THAT**:

(1).    the defendant's motion for summary judgment with respect to counts one, three, five, and six of the plaintiff's complaint be **GRANTED**; and,

(2).    counts one, two, three, five, and six of the plaintiff's complaint be **DISMISSED**.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
United States Magistrate Judge

Date: September 1, 2006

O:\shared\REPORTS\2004 Reports\04-1039.01.wpd